IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KOHLER RODRIC KURTZ,<br><br>Plaintiff,<br><br>vs.<br><br>STEVE KUNNATH, in his official and individual capacities, MIKE LABATY, in his official and individual capacities, JOHN DOE, in his official and individual capacities, CITY OF LIVINGSTON, MONTANA,<br><br>Defendants. | CV 20-138-BLG-TJC<br><br>**ORDER** |

Plaintiff Kohler Rodric Kurtz ("Plaintiff") brought this action against Defendants Steve Kunnath, Mike Labaty, the City of Livingston, and Jay Porteen, alleging violation of his constitutional rights and various state law claims based on Livingston police officers' use of excessive force in making an arrest. (Doc. 16.)

Presently before the Court is Defendants City of Livingston and Jay Porteen's Motion to Dismiss or Enforce Settlement Agreement (Doc. 42), and Plaintiff's Motion to Set Case for Scheduling (Doc. 44). The Court finds the Defendants' motion should be **GRANTED**, and Plaintiff's motion **DENIED as moot**.

/ / /

1

## I. BACKGROUND

Plaintiff initiated this action on September 18, 2020. (Doc. 1.) During the course of the litigation that followed, Defendants filed a motion to preclude testimony from Plaintiff's expert on grounds that Plaintiff's expert report was untimely. The Court agreed, and entered an order precluding Plaintiff from using the affirmative opinions in the expert's report to supply evidence on any motion, at any hearing, or at trial. (Doc. 35.)

On April 29, 2022, Defendants filed motions for summary judgment on all of Plaintiff's claims asserted against them. (Docs. 26, 29, 30.) Plaintiff did not respond to any of the motions.

In the meantime, Mr. Nelson, counsel for the City of Livingston and Jay Porteen, and Ms. Marshall, counsel for Plaintiff, engaged in settlement discussions via text message. (Doc. 43-1 at 4-8.) On June 7, 2022, Ms. Marshall proposed $5,000 to settle. (*Id.* at 4.) Mr. Nelson rejected, indicating "[b]ad for your expert on Cavan ruling." (*Id.*) He, therefore, counteroffered $1,000. *Id.* Ms. Marshall replied, "Ok. I'll check on it." (*Id.*)

A week later, on June 14, 2022, Mr. Nelson followed up on the settlement offer, asking "News?" (*Id.* at 5.) Ms. Marshall responded that she had been sick, and hoped to be back to work the following day. (*Id.*)

/ / /

Also on June 14, 2022, Defendants filed a Notice regarding Plaintiff's failure to respond to the motions for summary judgment. (Doc. 36.) Defendants noted that Plaintiff's response was more than four weeks overdue. Defendants, therefore, requested the Court enter summary judgment in their favor pursuant to Rule 56(e)(2), (3) and Local Rule 56.1. (*Id.*)

On June 16, 2022, Mr. Nelson texted Ms. Marshall again about the settlement asking "Well?," accompanied by a GIF of a skeleton, stating "Waiting for your reply." (Doc. 43-1 at 5-6.) Ms. Marshall responded later that day with a counteroffer, stating "$1500. Please oh please?!" (*Id.*) Mr. Nelson states that he believes he accepted the $1500 offer by phone. (*Id.* at 2.)

The next day, on June 17, 2022, Mr. Nelson notified the Court of the settlement by email. (*Id.* at 10.) Mr. Nelson copied Plaintiff's counsel, Ms. Marshall and Ms. Rebsom on the email.

Having been notified of the settlement, the Court issued an order on June 17, 2022, directing the parties to file a stipulation of dismissal within 30 days. (Doc. 37.) The Court also vacated all pending motions and deadlines as moot. (*Id.*)

On June 20, 2022, Mr. Nelson sent a Settlement Agreement and Release to Ms. Marshall. (*Id.* at 12-15.)

On June 30, 2022, Mr. Nelson sent Ms. Marshall a text message asking, "how do you want the check made out." (Doc. 43-1 at 7.) Ms. Marshall

3

responded, "Kohler R Kuntz please." (*Id.*)

On August 19, 2022, Mr. Nelson notified Ms. Marshall by text that he had Plaintiff's check. (*Id.* at 7.) Ms. Marshall replied with a "thumbs up" emoji, and stated "I'll see what's up with the release." (*Id.*)

The Court's deadline for filing the stipulation for dismissal passed with no action by the parties. Therefore, on October 3, 2022, the Court scheduled a telephonic Status Conference for October 18, 2022. (Doc. 38.)

The next day, on October 4, 2022, Mr. Bancroft, co-counsel for the City of Livingston and Jay Porteen, sent an email to Ms. Marshall and Ms. Rebsom with a duplicate of the Settlement Agreement and Release and a proposed stipulation and order of dismissal. (Doc. 43-2 at 3.) Mr. Bancroft received no response to the email. (*Id.* at 2.)

On October 13, 2022, Mr. Bancroft sent another email to Ms. Marshall and Ms. Rebsom, asking them to permit him to file the stipulation for dismissal. (*Id.* at 10.) Again, he received no response. (*Id.* at 2.)

Mr. Bancroft tried again on October 17, 2022. He sent Ms. Marshall and Ms. Rebsom another email asking for authorization to file the stipulation for dismissal. (*Id.* at 12.) But again, Plaintiff's counsel failed to respond.

On October 18, 2022, the Court held the Status Conference with counsel. (Doc. 40.) Plaintiff's counsel confirmed that the case had settled. The Court,

4

therefore, issued an order directing the parties to file a stipulation for dismissal within 14 days. (*Id.*)

On October 31, 2022, Mr. Bancroft followed up with Ms. Marshall and Ms. Rebsom regarding the settlement. (Doc. 43-2 at 13.) He indicated he had not heard anything from them, and reminded them that the Court's deadline for filing the dismissal was the next day. (*Id.*) Plaintiff's counsel once again did not respond. (*Id.*)

On December 15, 2022, Defendants filed the instant motion to dismiss or enforce the settlement agreement. (Doc. 42.) As with Defendants' motions for summary judgment, Plaintiff did not file a response.

Rather, more than three weeks after the response deadline, on January 30, 2023, Plaintiff filed a motion requesting that the Court set a scheduling conference. (Doc. 44.) For the first time, Plaintiff's counsel indicated that Plaintiff did not wish to settle.

Defendants oppose Plaintiff's motion, arguing the request should not be considered because the case is settled. (Doc. 45.)

## II.   DISCUSSION

It is well settled that "courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it[.]" *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978). Only

"[w]here material facts concerning the *existence* or *terms* of an agreement to settle are in dispute," must the court hold an evidentiary hearing. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) (emphasis in original). *See also Autera v. Robinson*, 419 F.2d 1197, 1199–200, n.11 (D.C. Cir. 1969) (noting the "summary procedure is admirably suited to situations . . . where there is no factual dispute and no legal defense to enforcement").

As an initial matter, the Court notes Defendant's Motion to Dismiss or Enforce Settlement Agreement is unopposed. Under the Court's Local Rules, Plaintiff's response brief was due by January 5, 2023. Plaintiff did not file a response or seek leave from the Court to extend time for responding to Defendants' motion. Thus, Plaintiff's failure to respond may be deemed an admission that Defendants' motion is well-taken. L.R. 7.1(d)(1)(B)(ii).

Even to the extent Plaintiff's Motion to Set Case for Scheduling might be considered a response, the Court notes that Plaintiff did not substantively respond to Defendants' motion. Plaintiff's counsel simply states that "legal counsel and client had miscommunication" and the settlement was allegedly not authorized. (Doc. 44 at 2.) But counsel has not provided any declarations or other evidence to show that the settlement is unenforceable. Because nothing in Plaintiff's motion raises a genuine dispute as to whether the parties agreed to settle, or about the

6

terms of their agreement, the Court finds this matter is suitable for disposition without an evidentiary hearing.

In *Dacanay*, the Ninth Circuit explained that there is "no serious issue concerning the ability of a party to unilaterally rescind a contract in settlement of litigation." *Dacanay*, 573 F.2d at 1078. "Assuming both the power of the attorney to bind his client and the validity of the agreement struck, a litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship." *Id.*

Federal district courts interpret and enforce settlement agreements according to the principles of contract law in the state where the action arose. *Montana Homes LLC v. BNSF Ry. Co.*, 287 Fed.Appx. 596, *1 (9th Cir. June 2, 2008). Under Montana law, a settlement agreement is binding if "made by an unconditional offer, and accepted unconditionally." *Hetherington v. Ford Motor Co.*, 849 P.2d 1039, 1041 (Mont. 1993.) Thus, a party to a settlement agreement is bound if they "manifested assent to the agreement's terms and has not manifested an intent not to be bound by that assent." *Lockhead v. Weinstein*, 81 P.3d 1284, 1287 (Mont. 2003). "A party's latent intention not to be bound does not prevent the formation of a binding contract." *Hetherington*, 849 P.2d at 1042.

Here, the parties entered into an oral settlement agreement. Oral

settlement agreements are enforceable under Montana law. *Stockman Bank of Mont. v. Potts*, 132 P.3d 546, 559 (Mont. 2006) ("The law does not require that a writing be signed before a settlement agreement is binding."); *Carlson v. State Farm Mut. Auto. Ins. Co.*, 76 F.Supp.2d 1069, 1071 (D. Mont. 1999) (finding oral settlement agreement entered into by the parties was an enforceable bilateral contract with executory duties on both sides).

Although the parties' settlement negotiations via text messaging were informal, the Court nevertheless finds their agreement is binding because it was made by an unconditional offer and unconditionally accepted. "The intentions of the parties are those disclosed and agreed to in the course of negotiations." *Hetherington*, 849 P.2d at 1042.

Here, Ms. Marshall made an unconditional opening offer of $5,000 to settle. When Mr. Nelson counter-offered with the sum of $1,000, Ms. Marshall stated she needed to "check on it." Presumably, Ms. Marshall's response indicates she would confer with her client concerning the counter-offer. The following week, Ms. Marshall countered Mr. Nelson's counter-offer with $1,500. Ms. Marshall neither placed any conditions on the $1,500 counter-offer, nor indicated that the offer was conditioned upon her further conferring with her client. To the contrary, her statement "$1500. Please oh please?!" indicates an unconditional offer to settle for $1,500. When Mr.

Nelson asked Ms. Marshall how the settlement check should be made out, she unequivocally stated it should be made out to Plaintiff, Kohler R. Kurtz. Again, Ms. Marshall did not express any condition or equivocation about the agreement to settle. Accordingly, the parties entered into a valid agreement to settle this case. *Dacanay*, 573 F.2d at 1078. The existence of the agreement was confirmed multiple times over the following months, with ample opportunity to disavow the settlement.

Further, there was no indication that Ms. Marshall lacked authority to enter into the settlement agreement. In Montana, the attorney-client relationship is considered an agency relationship. *Kaeding v. W.R. Grace & Co.*, 961 P.2d 1256, 1261 (Mont. 1998). "Under Montana law, a principle is deemed to have notice of all information known by his or her agent that the agent should, in good faith and exercising due care and diligence, have communicated to the principle." *Id.* Accordingly, knowledge of facts by an attorney is considered knowledge by the client, "regardless of whether the attorney actually communicated the information to the client." *Id.* Further, a principle who claims his agent has transcended his authority, "is bound to disavow it the first moment the fact comes to his knowledge." *McLaren Gold Mines Co. v. Morton*, 224 P.2d 975, 982 (Mont. 1950).

Thus, although the decision to settle rests with the client, "it is

presumed that an attorney-of-record who enters into a settlement agreement had authority to do so, and a party challenging an attorney's authority to settle the case bears the burden of proving by affirmative evidence that the attorney lacked authority." *U.S. Fidelity & Guar. Co. v. Soco West, Inc.*, 2011 WL 1045102, *5 (D. Mont. March 16, 2011).  Here, Ms. Marshall held herself out as having authority to negotiate and enter into the settlement agreement on behalf of her client.  Moreover, Plaintiff's counsel has not offered any evidence that Plaintiff sought to renounce the actions of Ms. Marshall.  Nor did counsel promptly raise the issue.  To the contrary, at the Status Conference on October 18, 2022, Plaintiff's counsel confirmed to the Court that the case was settled.  Counsel's statement, made 7 months after the settlement was negotiated, of Plaintiff's apparent latent wish to not settle, is insufficient to prevent the formation of a binding contract.

Accordingly, the Court finds Plaintiff is bound by the settlement agreement negotiated and agreed to by his attorney-of-record.

### III.   CONCLUSION

The Court finds this case is settled on the terms set forth in the Settlement Agreement attached as Exhibit C to Defendants' motion.  (Doc. 43-3.)  Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Enforce the Settlement Agreement (Doc. 42) is **GRANTED**, and this case is **DISMISSED**

**with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Set Case for Scheduling (Doc. 44) is **DENIED as moot.**

DATED this 24th day of April, 2023.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge